Thank you, Your Honors. My name is David Ness. I'm with the Federal Defenders of Montana and I represent Gerald Littlehead. This is the second time, second appeal in this case. It was reversed before and sent back so that the defendant could have notice of the court's reasons for departure or in this case a variance. Based on both the United States Supreme Court precedent and Ninth Circuit precedent, this court now reviews sentences for reasonableness and the reasonableness inquiry, of course, is undertaken under the totality of the circumstances test. District court can abuse its discretion, most importantly in this case, when it faces a sentence on erroneous factual findings or when it applies facts in an erroneous or irrational manner. Here, the district court, as set out in the briefs, looked at the evidence and looked at it in not only a one-sided point of view but also in a view that did not take into consideration other factors with respect to the crime of conviction. The defense had moved for a downward departure, suggesting that the victim's conduct was a major part in provoking this crime. The district court didn't seem to take that into consideration as much as the fact that its view that the defendant and his brother should have left the bar once they were approached and challenged and ultimately attacked by the victim. The district court also seemed to take into consideration a number of irrelevancies, one of them being that the defendant should not have brought his brother to the bar that night and that that somehow went into the totality of the circumstances analysis in determining whether or not a sentence above the guideline range was appropriate. The district court characterized the alleged crime as violent and almost sort of an unprovoked sort of event. Counsel, do you assert that the crime was not violent? Well, the crime was violent. It's violent both under case law, sure. But if the district court said it was violent, how is that ironic? Well, I guess going more towards unprovoked. I mean, the district court suggested that it was unprovoked because the defendant and his little brother should have left once they were approached. Didn't take into consideration other factors. Where in the district court's sentencing remarks did it say that the assault was unprovoked? I don't know that the district court used that language per se, but what the district court did say was that, and I can't remember the district court's exact words, but the district court said that they had the chance to leave, they should have left. And there was an argument in the record between defense counsel, but that was not me, between trial counsel and the district court as to the circumstances of the offense and what the jury's findings were. But what's wrong with that? What's wrong with the district court? I mean, in a lot of states, there is a duty to retreat before force can be used. So what's wrong with the district court observing that there was an opportunity to leave without this exclamation? Well, I mean, there were two things. I mean, as I recall from the record, the testimony was that the victim came over and had been offered some money to beat up the defendant, or I think his older brother in this case, who suffered from a head injury and was in ill health, and in fact punched the brother in the head. And then that's what got this fight underway. So once the little brother was punched, and then as I recall the evidence, the victim was on top of the little brother, that was when the defendant, Mr. Littlehead, then jumped into the fracas. So I don't know that there was, for all practical purposes, even an opportunity to retreat, unless perhaps you want to back up at some point before any punches were thrown, and the district, you want to view the record as they came up and they were approached and they should have run out of the bar at that time, but I don't know that the evidence... I understand your point, but I'm just saying if the district court made an observation about that, does that infect the sentence to such a point that it's unreasonable? What about that makes the sentence unreasonable? Well, because I think it takes a skewed view of the circumstances of what happened here, and I think it also places an undue and unfounded emphasis on this saying that the defendant and his brother had a duty to retreat and didn't fully consider the victim's conduct. And then particularly when the district court also seemed to take into consideration the fact that the defendant was somehow in the wrong because he and his little brother went to a bar, and I don't really know what sort of relevance that has, nor did it really take into consideration what was known to the defendant when all of this happened, and that was his little brother's medical condition. And that this, what may have looked to other people as simply a fight, was in fact a life-endangering situation for his little brother. The district court, the other thing I'll note is in looking at the defendant's background, the district court seemed to place a lot of emphasis on really two things, one of them being a charge that had been dismissed. There was a domestic violence situation involving the defendant and his brother. The brother had filed an affidavit, and that set forth in the pre-sentence report essentially saying that my older brother didn't do anything wrong. Did the brother's girlfriend file an affidavit saying he didn't do anything? No. So that allegation is still out there regarding the girlfriend. But you have to remember too that the charge was dismissed. The brother filed an affidavit saying that nothing happened. There was, as I recall in the pre-sentence report, nothing indicating from the brother's girlfriend that he in fact had engaged in the conduct that was set forth in the police reports. So I don't know that that's necessarily all that important. But probably of most importance was the district court's reliance. There was a time when the defendant checked himself into a mental hospital. He was suicidal, had been drinking, and he had indicated something about at one point he and his cousin had gotten into a fight. And he told the mental health counselor that he at the time wanted to kill his cousin. And the district court, I think, skewed that and took that way out of context. I mean, here was a person who checked himself into a mental hospital, was seeking help, and certainly didn't do anything to act on that. What was the final guideline calculation here? The final guideline calculation was 86 to 108 months, I believe it was. And what was the district court sentence? 120 months. And that was the most that the district court could go to. And I guess just the last thing I would point out on that other point is that, you know, this court has held in United States v. Bad Marriage, and I think reiterated it in other cases, that the district court should be cognizant of some of the hardships that Native Americans in particular face. And this particular defendant, there wasn't a pre-sentence report, but the district court didn't seem to place any discussion on Mr. Littlehead's background, the abuse he underwent as a child and things of that nature that, in particular, I think was relevant to its analysis of his statements to the mental health counselor. And for those reasons, I believe that the district court abused its discretion. This is not a case that should have been sentenced above the guidelines here. And I would ask that the court reverse. Thank you. Thank you. Good morning, Your Honors. May it please the court. My name is Leif Johnson for the United States. Mr. Littlehead's complaint here is really that the district court made clearly erroneous findings of fact. The district court didn't. If you look at the briefs, the argument that they're making is that the district court really didn't credit Gerald Littlehead's version and version of events that night. And there were really two versions of those events. The one version that Littlehead tells in his brief and relies on for his theory of imperfect self-defense is that when Michael Bell walked up and punched his brother, Zephyr in the face, Zephyr fell down. All the parties are in agreement on that. But then he says, Bell turned and attacked me. The other witnesses don't agree with that. Then he takes it further. He says, we fought. He punched me down. And then I got up. Littlehead gets up and Bell has then turned to attack his brother. This is another difference with the story that's told by the other witnesses at trial. And so from Littlehead's perspective, what he says is at the point when Bell went back to attack his brother the second time, that's when he pulled out the knife and tried to push him away from his brother and thus protect his brother. And he argues in the brief that this is a form of imperfect self-defense. The district court was correct in making the findings it did because they are supported in the record by all of the other witness testimony. And those witnesses all say when you parse it all out that Michael Bell walked up and punched Zephyr in the face. There's no dispute about that. He was the aggressor here. But then they diverge. Then they say very clearly that Littlehead then steps over his brother and approaches him from the side and begins swinging wildly with his right hand. Wild haymaker punches is what one of the witnesses described. And then from that point, all the witnesses were in agreement that they fell to the floor and the struggle was on. And at that point, a witness named Justin Azure and another named War Club both described that Zephyr got up. He was now safe. He was separate and apart from the fight. And Justin Azure says he tried to grab Zephyr because he was trying to get back into the fight and kick Bell when he was down. And so he pulls Zephyr away. And for 10 or 15 seconds, Bell and Littlehead struggle on the floor. And then Littlehead gets up, grabs his brother, and they run out. And when Bell stands up, he realizes that he's been stabbed five times, three deep puncture wounds to the chest. All right. So the district court in making the findings it did about the nature of this offense clearly relied on testimony at odds with Littlehead's version of the events. And clearly the court was free to do that. And if you read the sentencing findings of the district court in that light, they're all consistent with the record. And there really is no erroneous fighting at all. One thing that I did want to mention that Mr. Ness mentioned this morning is that the court talked about how the Zephyr Littlehead could have left and how Littlehead shouldn't have even brought his brother there in the first place. I think it's significant that the court made those findings in the first sentencing hearing. They're not in the second sentencing hearing. In the second sentencing, the defendant asked the court to consider this issue of imperfect self-defense and the court rejected it, rightfully so. The court did rely on this earlier incident where Littlehead attacked his brother. And as you noted, Judge Rawlinson, obviously the affidavit by Zephyr after the fact doesn't really take care of all that went on that night. And finally, if you look at that event as the district court did, it's pretty clear that what he did in this case is what he did in that case, which is he snapped. And that's what he said to his girlfriend after it was over. He didn't say, I was defending my brother. I was in mortal danger. He said, I snapped and I stabbed him. And the district court was clearly within the facts of the trial to conclude that this was a very aggravated circumstance for a voluntary manslaughter conviction. It's a 10 percent increase in the guideline range. We believe that's reasonable given all the facts and circumstances of the case. Did you try this case, counsel? I did not, Your Honor. Thank you. The matter is submitted. Let's see here. Thank you.
judges: Paez, Rawlinson, Jenkins